**Opinion filed October 13, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00211-CR

_____

## LARRY DOESCHER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 28068A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Larry Doescher, of aggravated sexual assault and assessed his punishment at confinement for a term of thirty years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (a)(2)(C) (West 2019). In his sole issue, Appellant challenges the sufficiency of the evidence to support his conviction. We modify and affirm.

*Background Facts*

K.S. is the alleged victim in this case. She was nineteen at the time of trial and seventeen when the alleged incident occurred. Her former pediatrician, Dr. Paul Maslanka, testified that K.S. has a very rare genetic condition known as "10q Minus Syndrome," which is a chromosome deficiency. Dr. Maslanka stated that K.S. suffers severe global developmental delay with permanently impaired cognition, speech, gross motor function, and fine motor function. He also testified that K.S. will never be able to live on her own and that she would not be able to handle money or manage her medicine.

Tamera Jeanine Dement is an educational diagnostician with the Abilene Independent School District. Her testing of K.S. revealed that she has intellectual disability with an IQ of below seventy in all areas with an IQ as low as thirty-three in some areas. Dement estimated that K.S.'s intellectual ability is equivalent to a child that is between six and seven years old. Dement testified that K.S.'s intellectual disability affects her decision-making and judgment. Christopher King, a special education teacher at Abilene High School, was K.S.'s teacher for four years. He agreed that K.S. has a severe intellectual disability with an IQ below seventy and that she functions as a child in the second or third grade. He also testified that K.S. could not live on her own and that she would need intensive supervision for any employment.

A.S. is K.S.'s mother. She testified that K.S. functions like someone with autism. K.S. suffered from delayed development. She has to be told when to bathe, is unable to cook food, does not know dates and times, and does not know the value of money. A.S. testified that K.S. would never be able to live on her own and that she is unable to ride public transportation or handle her own medication.

The trial court conducted a pretrial hearing to determine if K.S. qualified as a disabled individual under Section 3 of Article 38.072 and whether her outcry to A.S.

would be admissible.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2021).  The trial court ruled that K.S.'s statement to A.S. would be admissible.  A.S. testified that in August 2017, K.S. told her as follows:

> [K.S.] told me that [Appellant] . . . had sex with her, that he forced her to have sex.  First of all he asked her to come into his house for Kool-Aid and beer and she said that she was too young.  So then she got Kool-Aid.  She sat down and watched TV for a little bit.  He invited her upstairs to play video games with -- knowing that [his son] was not there.  And when this happened, he took [K.S.]'s clothes off and his clothes off, forced her onto the bed and she said that he put his d--k in her and it hurt.  She kept telling -- at that time she was crying and told him that -- kept telling him that it hurt, and he pushed her to the ground.

A.S. testified that K.S. made this report to her because K.S. had told some of her friends in their apartment complex about it and the friends made her tell her mother.  Appellant also lived in the same apartment complex.  A.S. believed that the incident happened three weeks prior when K.S. was alone at home for a few hours while the rest of the family attended a sibling's basketball game.

A.S. testified that K.S. was depressed after making the outcry.  K.S. attempted to commit suicide, and she told everyone that she was going to kill herself.  K.S. also began cutting herself.  F.S., K.S.'s father, testified that since K.S. made the outcry in August 2017, she is afraid to go outside by herself and that she panics if she sees someone that resembles Appellant.  King testified that when K.S. returned to school in the fall of 2017, she was less social.  She would hide and cry; she did not want to be touched or give hugs; and she was anxious about being hurt.

Lisa Ellis, a sexual assault nurse examiner, examined K.S. the day after her outcry.  She described K.S. as childlike and immature and said that she was very shy.  Ellis did not observe any injuries on K.S.  However, given the length of time between the alleged incident and the examination, Ellis was not surprised to find no injuries.  Ellis took a history from K.S. that included her description of the incident.

3

Ellis testified that K.S. was crying, shaking, and afraid to talk to her while giving the history. The history that K.S. related to Ellis was similar to the outcry that K.S. made to A.S.

K.S. was the final witness called by the State during its case-in-chief. She testified that Appellant lived in the same apartment complex and that she was friends with his son, M. She went to see M. but he was not home. She testified that Appellant invited her inside of his apartment and that he touched her in her "private part," which she described as the place where she goes to the bathroom, with his "private part." K.S. further testified that Appellant's private part went inside of her private part and that "[i]t didn't feel good." K.S. stated that she told Appellant to stop and that he only stopped when she began yelling and screaming.

*Analysis*

In his sole issue, Appellant challenges the sufficiency of the evidence supporting his conviction. Specifically, he contends that his conviction was based solely on the claims of a disabled individual without any scientific evidence to support her claims or to prove that she was inside Appellant's apartment. Appellant also asserts that he did not have a tattoo on his leg as reported by K.S. Finally, Appellant contends that based upon K.S.'s claim of penetration, Ellis should have found some evidence of injuries to K.S.'s hymen.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

4

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

As relevant to the charged offense, a person commits aggravated sexual assault if he intentionally or knowingly caused the penetration of the sexual organ of a disabled individual by any means without that person's consent. *See* PENAL § 22.021(a)(1)(A)(i), (a)(2)(C). Under the statute, a "disabled individual" is "a person older than 13 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect the person's self from harm or to provide food, shelter, or medical care for the person's self." *Id.* § 22.021(b)(3). Appellant does not challenge K.S.'s status as a disabled individual.

The evidence established that K.S. has the intellectual ability of a child. As such, her allegations are similar to those made by children. When we assess the sufficiency of the evidence in cases involving child victims, we cannot expect them to testify with the same clarity and ability that we would expect of a mature and capable adult. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). The Court of Criminal Appeals has recognized that expecting "such testimonial capabilities of children would be to condone, if not encourage, the searching out of

5

children to be the victims of crimes such as the instant offense in order to evade successful prosecution." *Id.* These principles are applicable to our analysis in this case.

The uncorroborated testimony of a disabled victim is sufficient to support a conviction for aggravated sexual assault. CRIM. PROC. art. 38.07 (West Supp. 2021); *see Chapman v. State*, 349 S.W.3d 241, 245 (Tex. App.—Eastland 2011, pet. ref 'd) (dealing with a child victim). With respect to Appellant's assertion that there was no scientific evidence in the case, corroboration of the victim's testimony by medical or physical evidence is not required. *See Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.); *see Cantu v. State*, 366 S.W.3d 771, 775–76 (Tex. App.—Amarillo 2012, no pet.); *Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Ellis explained that because of the passage of time between the alleged assault and her examination of K.S., she was not surprised by the absence of injuries to K.S. Ellis also testified that because of K.S.'s age, penetration could have occurred without injury to her hymen because it was "highly estrogenized" and "very elastic" in nature.

As noted by Appellant, there was an inconsistency in the account offered by K.S. because she reported to the police that Appellant had a specific tattoo. However, Appellant did not have this tattoo when Detective Tim Pipes of the Abilene Police Department examined him in jail. Another inconsistency existed with A.S.'s statement that she tried to give the police K.S.'s bloody clothes, which K.S. had hidden after the incident. A.S. testified that she tried to give the clothes to the police but that the police did not take them. The officers that testified stated that A.S. did not try to give them any clothes.

K.S. testified that Appellant sexually assaulted her without her consent. A.S. also testified to the substance of the outcry that K.S. made to her.[1] As the factfinder, the jury had the task of resolving conflicts and inconsistencies in the evidence and determining the credibility of the witnesses. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778. Furthermore, we defer to those determinations made by the jury. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. In this regard, we note that K.S.'s parents and her teacher testified about behavioral changes that occurred with her after she made the outcry. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have determined that Appellant committed aggravated sexual assault as charged in the indictment. *See Jackson*, 443 U.S. at 319. We overrule Appellant's sole issue on appeal.

While we overrule Appellant's sole issue, we note that the trial court's judgment of conviction contains a clerical error. Specifically, the judgment indicates that the jury convicted Appellant of "AGGRAVATED SEXUAL ASSAULT OF CHILD (14<17) YRS OLD." *See* PENAL § 22.021(a)(1)(B). However, Appellant was charged and convicted of aggravated sexual assault of a disabled individual. *See* PENAL § 22.021(a)(1)(A)(i), (a)(2)(C); *see also* PENAL § 22.011(c)(1) (West Supp. 2021) (a child is a person younger than seventeen years of age). This court has the authority to modify a judgment to correct a clerical error when the evidence necessary to correct the judgment appears in the record. *See* TEX. R. APP. P. 43.2; *Arndt v. State*, No. 11-20-00032-CR, 2021 WL 5934652, at *3 (Tex. App.—Eastland Dec. 16, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). Accordingly, we modify the

---

[1] A victim's outcry statement can be sufficient to sustain a conviction for a sexual assault. *See Chavez v. State*, 324 S.W.3d 785, 788 (Tex. App.—Eastland 2010, no pet.) (dealing with a child victim) (citing *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991)).

judgment to reflect that the "Offense for which Defendant Convicted" is "AGGRAVATED SEXUAL ASSAULT OF A DISABLED INDIVIDUAL."

*This Court's Ruling*

As modified, we affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


October 13, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.